## LINDEN STEEL CO. v. IMPERIAL REF. CO.

APPEALS BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 8, 1890—Decided November 3, 1890.
[To be reported.]

1. If a mechanics' claim for lien filed under the act of June 16, 1836, P. L. 695, and its supplements, contains a description of the locality, and of the peculiarities of the building, adequate to point out and identify it with reasonable certainty, it is a sufficient compliance with the requirements of the act: Kennedy v. House, 41 Pa. 39.

2. An oil refinery, although peculiar in its construction, is the proper subject of a mechanics' lien under the act of 1836; and, as the ordinary forms or methods of description are inapplicable, it is sufficient if there be such reasonable certainty of description as will clearly identify the subject of the lien claimed, to creditors, purchasers and others.

(a) A mechanics' claim, filed against an oil refinery, described with particularity the land on which the refinery was erected, but in general terms the buildings and structures composing the same, and for a more particular description thereof referred to an accompanying map, which showed the sizes and locations of all the buildings and the connections between them:

3. The claim contained a description sufficient to comply with the statute, although the principal structures only were designated by name upon

the map, the diagrams of the others being numbered, but no names corresponding to the numbers being given: Short v. Miller, 120 Pa. 470, and Titusville I. Works v. Oil Co., 130 Pa. 211, followed; Short v. Ames, 121 Pa. 530, distinguished.

4. A motion by the plaintiff to amend, more than six months after the filing of the lien, during the pendency of a scire facias thereon and after a motion by the defendant to strike it off, by filing a paper explaining with particularity what each of the diagrams on the map represented, should have been allowed, the effect of the amendment being merely to make the claim more precise, specific and particular.

5. A claim for lien for materials furnished on March 17, 22, and 27, 1888, for the erection of an addition to a refinery, stating that notice of an intention to claim a lien was given on, prior to, and after March 28, 1888, and that such intention was known to and understood by all parties from the beginning of the negotiation for the materials, sufficiently avers the notice to the owner required by the act of May 18, 1887, P. L. 118.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

Nos. 63, 64 October Term 1890, Sup. Ct.; court below, Nos. 100, 101 August Term 1888, C. P

On August 8, 1888, the Linden Steel Company, Limited, issued writs of scire facias against the Imperial Refining Company, Limited, owner or reputed owner, and the Titusville Iron Works, contractor, upon two mechanics' liens filed by the plaintiff in the court below.

On September 14, 1888, affidavits of defence were filed, upon the merits, raising no question respecting the formality of the plaintiff's claims. On November 12, 1888, the plaintiff's attorneys entered rules on the defendants to plead, and on December 4, 1888, judgments for the plaintiff were entered in default of pleas. On December 13th, counsel for the defendants having presented affidavits excusing the failure to plead, and averring that sufficient affidavits of defence had already been filed, the court made an order opening the judgments. Thereupon the defendants filed in each case a motion to strike the lien from the record, when a rule was granted to show cause why the motion should not be allowed. Afterwards the defendants filed in each case a demurrer to the plaintiff's claim as insufficient.

The material parts of the claim for lien, recited in the scire

Statement of Facts.

facias at No. 100 August Term 1888, in the court below, were as follows:

" The Linden Steel Company, Limited, above named, hereby files its claim or statement of demand for shell and flange steel plates furnished for the erection and construction of material additions to the refinery of the Imperial Refining Company, Limited, known as the Union Refinery, and against the buildings and the ground covered thereby, and so much other ground immediately adjacent thereto and belonging to the said Imperial Refining Company, Limited, as may be necessary for the ordinary and useful purposes of the same, and sets forth as follows, to wit:

" First. The name of the party claimant is the Linden Steel Company, Limited; the name of the owner, or reputed owner, is the Imperial Refining Company, Limited; the name of the contractor, at whose instance and request the material was furnished, is the Titusville Iron Works.

" Second. The amount claimed to be due is $730.66 for shell and flange steel plates furnished within six months last past, for and about the erection and construction of a material and essential addition to, and upon the credit of, the refinery, buildings, machinery, etc., hereinafter described, the particular items, amounts and the dates when said material was furnished being specifically set forth in the bill hereto annexed and made a part of this claim.

" Third. The said Union Refinery, buildings, etc., are located on a certain piece, parcel or tract of land situate within the city of Oil City, county of Venango and state of Pennsylvania, bounded and described as follows: [Here followed the lines by courses and distances, and the adjoiners of the land;] containing 12¼ acres, more or less, having thereon erected a large oil refinery used to refine crude petroleum and to manufacture gasoline, etc.; which refinery has a capacity of 1800 barrels and upwards per day; a map or plan showing the exact location of said refinery, its tanks, buildings, stills, etc., being hereunto attached, made a part hereof, and marked exhibit A.

" Fourth. All the steel plates specifically mentioned in the itemized statement annexed hereto and made a part hereof were made and furnished by the said Linden Steel Company, Limited, for the erection and construction of a material and

Statement of Facts.

essential addition to the refinery aforesaid of the said Imperial Refining Company, Limited, to improve the same and increase its capacity and efficiency.

"Fifth. The above mentioned material and essential addition to said refinery, for and about the erection and construction of which said steel plates were furnished, consisted of one six hundred-barrel steam still for steaming naptha, said still being inseparably connected with said refinery and being an essential part thereof; the relative location of said still, and of the various component parts of said refinery, being shown in the map or plan above referred to, in which said map or plan, said still, for and about the erection and construction of which said material was furnished, is colored red.

"Sixth. That the said Linden Steel Company, Limited, furnished all of said steel plates, and parted with the possession thereof for the erection and construction of said steel still, to be inseparably connected with said refinery, and to constitute a necessary, essential and material addition thereto and part thereof, and so furnished all of said materials upon the faith and credit of the said refinery, or buildings, machinery, etc., and with the intention that the said refinery should be held liable under the mechanics' lien laws of the commonwealth of Pennsylvania for the payment of the amount due therefor; due, timely and legal notice of which intention on the part of the said Linden Steel Company, Limited, was furnished and given on the 28th day of March, A. D. 1888, prior thereto, and afterwards, to the said Imperial Refining Company, Limited, the said owner or reputed owner, and the fact that said materials were furnished upon the faith and credit of the said refinery, and that it was the intention of the said Linden Steel Company, Limited, to hold the same liable for the payment of said amount under the mechanics' lien laws aforesaid, was expressly recognized, known and understood by all parties hereto from the very beginning of the negotiations which resulted in the furnishing of the said materials for the purposes aforesaid."

The itemized account, mentioned in and appended to the lien, contained charges bearing date March 17, 22 and 27, 1888, respectively. The draft referred to in the claim as exhibit A, showed the boundary lines of the land against which the lien was filed, and the various structures erected thereon,

Statement of Facts.

exhibiting the location of said structures on the tract and with reference to each other, their shapes and relative sizes, and various other details stated in the opinion of the Supreme Court. The names of some of the buildings and other structures represented upon the map were not given thereon, but the diagrams of them were numbered. No explanatory paper referring to those numbers accompanied the map, however.

The claim recited in the scire facias to No. 101 August Term, in the court below, was filed against the Imperial refinery, and was in all respects similar to the one described above.

On January 14, 1889, after the filing of the motions to strike off the lien, but before the demurrers were filed, the plaintiff asked leave to amend in each case, by filing an additional paper, explaining the map filed with the lien. The following are specimens of the explanations given in the paper relating to the map of the Union refinery :

"Diagram marked No. 1 in red, on the map, represents a frame building 12 feet wide by 16 feet long and is 16 feet high.

"Diagram marked No. 2 in red, on the map, represents a frame building used for an engine house, and is 10 feet wide and 12 feet long and 12 feet high."

The explanatory paper relating to the Imperial refinery was similar in form. Each of those papers concluded by making the following averment:

"That all of the aforementioned property is included in the lien filed in this case, and is connected and joined together by iron pipes, as represented by the various colored lines on said map, and is used and operated as one plant by the party defendant, the Imperial Refining Company, Limited."

The court granted rules to show cause why the amendments prayed for should not be allowed. No further action directly upon these rules was taken. The demurrers and the rules to strike off the claims having been argued together, the court, TAYLOR, P. J., on March 3, 1890, entered a decree sustaining the demurrers and making the rules to strike off absolute. Thereupon the plaintiff took these appeals, specifying in each case that the court erred :

1. In making absolute the rule to strike off the lien.

2. In sustaining the defendants' demurrer.

3. In making the decree of March 3, 1890.

Arguments.

*Mr. Isaac Ash* and *Mr. D. T. Watson* (with them *Mr. P. M. Speer*), for the apppellant:

1. After filing the affidavit of defence, it was too late to object to the sufficiency of the description of the property in the lien filed: Titusville I. Works v. Oil Co., 130 Pa. 211. This principle should be particularly emphasized in the present case. If the defendants had moved to strike off the lien, at the time the affidavit of defence was filed, the plaintiff could have amended, or could have filed a new lien, as it was then less than six months after the furnishing of the materials. However, the property is sufficiently described in the lien. It furnishes on the whole a better description than that pronounced sufficient in Titusville I. Works v. Oil Co., supra. The explanatory papers, if originally attached to the liens, would have made perfect descriptive statements.

2. The plaintiff had a right, under § 2, act of June 11, 1879, P. L. 122, to file those papers and make them a part of the liens. Knox v. Hilty, 118 Pa. 430, when closely examined, is not against this position, but supports it, as do Fahnestock v. Wilson, 95 Pa. 301; Florey v. Haverford College, 24 W. N. 372; and Snyder Chapel v. Baer, 3 Penny. 530. This lien was filed under the act of June 16, 1836, P. L. 695, and its supplements, one of which is the local act of February 27, 1868, P. L. 212, operative in Venango and other counties, and expressly subjecting oil refineries and their appurtenances to a lien. The original lien is valid under that act. The act of June 5, 1874, P. L. 300, which attempted to repeal the act of 1868 as to Venango and certain other counties, is unconstitutional and void, being in contravention of §§ 3, 6, 7, 8, article III., of the constitution.

*Mr. Roger Sherman* (with him *Mr. Samuel Grumbine* and *Mr. H. McSweeney*), for the appellees:

1. An affidavit of defence, filed within twenty days after the return day of the writ, because required by a Rule of Court under penalty of having judgment entered against him, will not estop defendant from afterwards filing a demurrer to the plaintiff's declaration. The affidavit of defence is not a plea, nor any part of the pleadings: West v. Simmons, 2 Wh. 261. A demurrer is one form of pleading. We do not understand

Arguments.

Titusville I. Works v. Oil Co., 130 Pa. 211, as holding that a demurrer to a claim cannot be sustained after filing an affidavit of defence. So to interpret it would be to overrule many decisions of this court, among which are: Lybrandt v. Eberly, 36 Pa. 347; Lee v. Burke, 66 Pa. 336. In Titusville I. Works v. Oil Co., the appellant asked this court to decide, upon the authority of Thomas v. Shoemaker, 6 W. & S. 179, that the sufficiency of the plaintiff's claim is necessarily in question upon a motion for judgment for want of a sufficient affidavit of defence, and this was the point in the case, as appears by the reporter's syllabus. This court had previously adjudged the affidavit of defence insufficient, and that judgment necessarily involved a decision that the plaintiff's claim was good in form, as otherwise no affidavit of defence would be necessary, and consequently no judgment could be entered, no matter how defective the affidavit might be. But, in the case now at bar, there was no question as to the sufficiency of the affidavit of defence, and the legality of the plaintiff's claim was never passed on by any court, until argued upon the demurrer and motion to strike off, by which alone that question was raised in the regular and ordinary course of practice.

2. The paper by which it was proposed to amend or explain the lien, is not before this court. The plaintiff had no right to file it as an amendment. There was nothing to amend by. Amendment is not creation, and a lien which is fatally defective, for want of a description of the building, cannot be made good by filing an "amendment" after the lapse of six months. As an explanatory statement, it is entitled to precisely the same weight as an offer to prove by parol, upon trial, what is necessary to make good a totally defective description. The question whether the act of February 27, 1868, P. L. 212, is still in force or not, is entirely immaterial. It is now the settled law that a lien against an oil refinery may be sustained under the act of June 16, 1836, P. L. 695. But under no act of assembly can a lien be sustained without a sufficient description of the property against which it is filed. The buildings must be so described as to be capable of identification: Short v. Ames, 121 Pa. 530. The vital question in this case is, therefore, whether there is such a description, and we submit that there is not. The description is not as particular and satisfactory as

the one held insufficient in Short v. Ames, supra. It lacks the essentials which appear in the cases of Short v. Miller, 120 Pa. 470, and Titusville I. Works v. Oil Co., 130 Pa. 211. There is nothing to identify the structures, severally or as a whole. Their size, character, form, height, material, etc., are not given. The alleged description would apply to any refinery. An interested and inquiring purchaser or lien creditor might wander around in a labyrinth of structures upon the land described, and never ascertain to what he would obtain title, 'or how far his own lien might be affected, so far as the statement of claim gives information.

3. Prior to the act of May 1, 1861, P. L. 550, no lien could be claimed for furnishing materials for alterations, repairs or additions. By that act, a lien was given for materials furnished for an "addition to any house or other building." Does the statement of the claim in this case, reading its language in connection with the map, show that any addition was made to any building? Does it describe any building to which the addition was made? The statement that it was an addition to a refinery, is not sufficient to designate the buildings composing the refinery: Short v. Ames, 121 Pa. 530. The claim shows on its face that an undescribed thing was an addition to another undescribed thing, and we are asked to presume that both are substantial buildings to which the lien of a material-man could attach. Again; the act of May 18, 1887, P. L. 118, requires notice to be given to the owner or reputed owner, of the intention to claim a lien under the act of 1861, at the time the materials are furnished, and this, like every other essential fact, necessary to show the claimant's right, should appear upon the face of the lien: Barclay's App., 13 Pa. 495. In this case, it does not appear with sufficient definiteness that the notice was given at the time of furnishing the materials. The claim is therefore defective, in not showing affirmatively upon its face that the plaintiff was within the statutes authorizing the filing of a lien.

### NO. 63.

OPINION, MR. JUSTICE CLARK:

The appellees' contention, in this case, is that the buildings and structures composing the Imperial Oil Refinery are not suf-

ficiently described in the statement of the lien as filed, and the
question arises upon a motion to strike off the lien upon that
ground, and upon a demurrer to the same effect. If the claim
be insufficiently stated, the proper course is to move to strike it
off: Lehman v. Thomas, 5 W. & S. 262; or to demur: Howell
v. Philadelphia, 38 Pa. 471. In the case now under considera-
tion, under stress of a rule to plead the appellees did both, and
the court below, upon argument, made the rule absolute and
sustained the demurrer. By pleading to the scire facias, the
objection would have been waived: Lybrandt v. Eberly, 36 Pa.
347; Howell v. Philadelphia, supra.

By the third clause of the twelfth section of the act of June
16, 1836, it is required that a mechanics' claim shall set forth
"the locality of the building, and the size and number of the
stories of the same, or such other matters of description as shall
be sufficient to identify the same." If there be enough in the
description of the locality and of the peculiarities of the build-
ing, to point out and identify it with reasonable certainty, it is
a sufficient compliance with the requirements of the act: Ken-
nedy v. House, 41 Pa. 39. The building or structures against
which this lien was entered was an oil refinery, which is so pe-
culiar in its construction that the ordinary forms or methods of
description are inapplicable. A description of an oil refinery by
" the size and number of its stories," would be absurd and wholly
inadequate. The mechanics' lien creditor must therefore resort
to "such other matters of description as shall be sufficient to
identify the same."

In Short v. Miller, 120 Pa. 470, it was held that an oil refin-
ery, although peculiar in its construction, is the proper subject
of a mechanics' lien, under the general act of 1836; and, as
the claim in that particular case described the locality with
reasonable certainty, enumerated the several structures, de-
scribed their uses, gave the dimensions, height or capacity of
each, and the materials of which they were constructed, the lien
was held to be good. So, in Titusville I. Works v. Keystone
Oil Co., 130 Pa. 211, the claim enumerated the principal build-
ings and structures constituting the plant, described their uses,
gave the dimensions, height, or capacity of each, and the mate-
rials of which they were constructed, and averred that the
whole, taken together, constituted an oil refinery, the location

of which was fixed by a particular description of the land upon which it was constructed. This description was also held to be sufficient under the act of 1836. In Short v. Ames, 121 Pa. 530, this form of description was not pursued; indeed, there was no sufficient identification of the buildings intended to be embraced. The description in that case was as follows: " Said buildings and oil refinery are situate in the county of McKean, and state of Pennsylvania, and is bounded and described as follows: [then follows a description of the land;] and having buildings and machinery erected thereon, consisting of boiler and boiler-house, tanks, and tank-houses, stills, warehouse and barn, and donkey pumps, engines, and fittings." This was radically defective. The description was all in such general form that it might, with equal propriety and accuracy, have been applied to almost any oil refinery.

In the case at bar, however, the lien is filed against what is known as the Union Refinery, located on a lot or piece of ground particularly described by metes and bounds, as well as by adjoiners, containing twelve and one fourth acres. The buildings and structures are described, in general terms, as follows: " A large oil refinery, used to refine crude petroleum, and to manufacture gasoline, etc.; which refinery has a capacity of 1,800 barrels, and upwards per day; a map or plan showing the exact location of said refinery, its tanks, buildings, stills, etc., being hereunto attached." The claim further sets forth that " all the steel plates, specifically mentioned in the itemized statement annexed hereto and made part hereof, were made and furnished by the said Linden Steel Company, Limited, for the erection and construction of a material and essential addition to the refinery aforesaid of the Imperial Refining Company, Limited, to improve the same, and increase its capacity and efficiency;" that " the above-mentioned material and essential addition to said refinery, for and about the erection and construction of which said steel plates were furnished, consisted of one six hundred-barrel steam still for steaming naphtha, said still being inseparably connected with said refinery, and being an essential part thereof; the relative location of said still, and of the various component parts of said refinery, being shown in the map or plan above referred to, in which said map or plan, said still, for and about the erection and con-

struction of which said material was furnished, is colored red."
Referring to the map, which is made part of the claim, we find
a complete description of the land, with the buildings and
structures composing the refinery, protracted upon a scale of
forty feet to the inch.    This map shows the sizes and relative
locations of all the buildings, with respect to the lines of the
land, the creek and the railroad, and with respect to each other.
The pump-house, the boiler-house, the agitator, the condensers,
the stills, shops, blacksmith shop, water-tanks, oil tanks, the
office, etc., drawn to this scale, are not only represented by
name, but the various pipe connections are fully exhibited in
variously colored lines, representing the alkali, acid, air, water,
steam, and oil pipes, respectively, as they are used in the regu-
lar operation of the refinery.    The structures not named are
numbered as if with reference to some explanatory paper, which
however was not filed with the lien.

Considering the peculiar structure of an oil refinery, we are
of opinion that the draft contains a better description of it
than was reasonably practicable by any other means, and we
are clearly of opinion that the lien, as filed, with the accompa-
nying map, must be held to contain "such matters of descrip-
tion as would be sufficient to identify the same."    To support
a mechanics' lien against an ordinary dwelling house, it is not
necessary to describe it in every part, every room or apartment,
or appliance  connected with it ; it is sufficient if it be described
in such form, and with such reasonable certainty, as will clear-
ly identify it to creditors, purchasers, or others interested.    An
oil refinery is not a single structure, in the same sense as a
dwelling : it consists of a variety of structures, peculiar in form,
large and small, each adapted to some particular use in the
process of refining oil ; but the whole of these several and va-
rious structures, taken together, is but a single establishment,
and is known and used as an oil refinery.    It is not necessary
that every part and appliance of the refinery should appear in
the claim, but there should, as in the case of a dwelling, be
such reasonable certainty of description as would clearly iden-
tify the subject of the lien.

The claim further sets forth that the materials charged in
the statement of claim were furnished upon the credit of the
refinery, or the buildings, machinery, etc., thereof, and that

notice thereof was not only given to the owner on the 28th March, 1888, prior thereto, and afterwards, but the plaintiff's intention to hold the refinery for payment of said materials under the mechanics' lien law " was expressly recognized, known, and understood by all the parties hereto from the very beginning of the negotiations which resulted in the furnishing of the said materials for the purposes aforesaid."

We are of opinion that, so far as any question has been made, the claim in this case is sufficient; that the effect of the amendment was merely to make the claim more precise, specific and particular, and should have been allowed. In this view of the case, it is unnecessary to consider the remaining assignments of error.

> The order sustaining the demurrer and making the rule to strike off the mechanics' lien absolute is reversed; the demurrer is overruled, and the rule discharged; the lien is reinstated, the amendment allowed, and a procedendo awarded, the appellees to pay the costs of this appeal.

## NO 64.

OPINION, MR. JUSTICE CLARK:

For reasons given in our opinion filed at No. 63 October Term 1890,

> The order sustaining the demurrer and making the rule to strike off the mechanics' lien absolute is reversed; the demurrer is overruled, and the rule discharged; the lien is reinstated, and the amendment allowed; a procedendo is awarded, and the appellees ordered to pay the costs of this appeal.